Chief Judge Fuld (dissenting).
In my view, the petition states a cause of action for dissolution of respondent H.J.E. Eealty Corporation and should not have been dismissed without a hearing.
The petitioners-appellants hold 4/9ths of the outstanding shares of the corporation and the Epstein Estate and the Horowitzes, the remaining 5/9ths. The corporation has as its sole asset a seven-story building in Manhattan. It has no other business. In 1941, the petitioners and the present majority shareholders were tenants, operating their own respective businesses, in the building. They agreed, at that time, to join together and organize a corporation which would purchase the building and operate it for their mutual benefit at a minimum rental for each. More specifically, each was to pay the same artificially low rent per square foot and only the nonshareholder tenants would be charged a normal market price rental.
When, several years later, the petitioners moved out of the building, the nature of the corporation—■ originally formed, as already indicated, for the benefit of all of its stockholders—• changed radically. The portion of the premises occupied by the majority shareholders expanded to the point that there was (and is) only one other tenant, occupying less than half of a *551 single floor in the seven-story building. Although the corporation’s assets were worth in excess of $350,000, it showed only negligible profits in 1966 and 1967 and a loss amounting, we are told, to more than $4,800 in the first eight months of 1968. The reason for this, quite obviously, was that the entire profit which the corporation could potentially earn was being siphoned off by the majority group in the form of reduced rent. The minority stockholders, although they had contributed more than 44% of the corporation’s capital, were realizing no return whatsoever on their investment and there was no prospect of any change.[1]
Implicit in the agreement which the parties signed was the idea that H.J.R. was not to be an ordinary real estate corporation formed to collect rent and distribute or reinvest the proceeds. Rather, it was conceived as a co-operative venture by which several tenants in a building would insure themselves a minimum rental expense by acting as their own landlord. The shareholders’ agreement expressly recited that “ all the parties to this agreement, are not only shareholders in H.J.R. Realty Corporation, but are also tenants or are financially interested in firms which are tenants in the building (Italics supplied.) The agreement is instinct with the understanding that, should any of those shareholders cease to be (or represent) a tenant in the building, the agreement would no longer be applicable to him and he would not be required to maintain his interest in the corporation. Thus, it may well be said, the existence of the corporation in its initial form was conditioned upon each of the stockholders continuing as a tenant in the building.
The circumstance that majority shareholders may not be “looting” the corporation or “wrongfully diverting” its assets is insufficient basis for denying corporate dissolution. What is significant and operative is the indisputable fact that this corporation is being continued solely and exclusively for the benefit of those holding 5/9ths of the company’s shares. Stated somewhat differently, in the light of what has occurred, the reason for corporate existence is gone.
*552 Although our decision in Leibert v. Clapp (13 N Y 2d 313) may not mandate such a result, it certainly points the direction in which we should go. And our later holding in Kruger v. Gerth (16 N Y 2d 802), which was decided only after there had been a full hearing and findings of fact, hardly requires that the petition in the present case be dismissed without affording the petitioners a hearing. If it can be shown, as asserted in the petition, that the corporation no longer fulfills the function for which it was organized, no longer serves the interests of the shareholders for whose benefit- it was created, then, there is neither reason nor justification to keep it alive, and the courts should not hesitate to direct its dissolution.
In refusing to allow an action for dissolution where it is alleged that a close corporation no longer serves the function for which it was created and employs its assets for the exclusive benefit of only some of its shareholders, the court, I suggest, ignores business reality and perpetuates inequity. A close corporation, like a partnership or joint venture, is nothing more than a convenient business arrangement entered into for the mutual advantage of its participants. Although control of its assets may be exclusively vested in the majority, it is implicit, in the nature of the corporate form, that its purpose is to provide some benefit for all of those who have contributed their capital to the venture. When changing circumstances render that purpose impossible of achievement, a court of equity should be no more reluctant to permit a corporate dissolution than it would be to dissolve a purely contractual relationship.
The order appealed from should be reversed and Special Term’s reinstated.
Judges Burke, Bergan, Beeitel and Gris sou concur with Judge Scileppi; Chief Judge Fuld dissents and votes to reverse in a separate opinion in which Judge Jasen concurs.
Order affirmed, with costs.

. The complaint alleges—and we assume that the allegation is true — that the respondents have refused to purchase the petitioners’ shares except at a totally inadequate price.